IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LARRY CHATMAN (K66482), ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. 14 C 1650 |
| v. ) | |
| ) | |
| MICHAEL MAGANA, Warden, ) | |
| Stateville Correctional Center,[1] ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is pro se Petitioner Larry Chatman's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d). For the following reasons, the Court denies Chatman's habeas petition and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## BACKGROUND

Chatman does not present clear and convincing evidence challenging the statement of facts in the last state court decisions addressing his arguments on the merits, and thus the Court presumes those facts are correct for purposes of its habeas review. *See* 28 U.S.C. § 2254(e)(1); *Ford v. Wilson,* 747 F.3d 944, 947 (7th Cir. 2014). The Court therefore adopts the underlying facts as set forth by the Illinois Appellate Court, First District, in *People v. Chatman,* No. 1-10-2275 (1st Dist. Aug. 27, 2013) (unpublished), and *People v. Chatman,* No. 1-06-2990 (1st Dist. Jan. 27, 2009) (unpublished).

---

[1] Petitioner is incarcerated at the Stateville Correctional Center and is in the custody of Tarry Williams, who is the Warden. Accordingly, the Court substitutes Williams as the proper Respondent pursuant to Federal Rule of Civil Procedure 25(d) and Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

I.   **Factual Background**

Two men shot and killed Anthony Redmond in the parking lot of the Spin Cycle Laundromat located at 4258 West Madison Street in Chicago, Illinois at approximately 12:15 p.m. on June 19, 2001. At trial, the State called Sonja Haggard, who was an eyewitness to the shooting. Haggard testified that she had traveled to West Madison Street by bus so that she could meet the father of her children and that after exiting the bus, she did not see her children's father. She then intended to cross the street to the laundromat to call him, but she saw two men standing outside the laundromat, who pulled guns from their waistbands and began shooting Redmond. While trying to run, Redmond fell to the ground. Haggard further testified that the larger of the two men ran over to Redmond and proceeded to shoot him multiple times. Haggard identified the larger gunman as Chatman both in court and in a police lineup. Although she was not able to identify the smaller gunman, Haggard testified that she was able to get a "good look" at Chatman's face during the shooting. She further testified that after shooting Redmond, the two men fled in a car.

Additional trial testimony revealed that Jacob Wilder was in the laundromat at the time of the shooting. At trial, Wilder testified that he saw Redmond running towards a car after he heard shouting coming from outside the laundromat. Wilder also stated that one of the gunmen was larger, and that the larger one shot Redmond multiple times after which Redmond fell to the ground. Although Wilder testified that he identified the larger gunman in an earlier lineup, he answered "no" when asked if he remembered whom he had identified.

Chicago Detective John Pellegrini also testified at trial. He stated that Wilder identified Chatman as one of the gunmen in a lineup on July 16, 2001. When asked who Wilder picked

out, Detective Pellegrini answered "[o]ne of the shooters who shot the victim, and after the victim fell down, walked up to him and then continued shooting at the victim as he laid on the ground." At that time, the Circuit Court judge overruled defense counsel's hearsay objection.

Also at trial, Miriah Davidson, Chatman's former girlfriend and mother of his child, provided an alibi testifying that she was with Chatman the entire evening of July 18, 2001, and in the morning of June 19, 2001. Specifically, she testified that on June 19, 2001, they were at the Presidential Inn motel and that after they checked out, they went to her home where they cooked a meal and watched television. Davidson testified that Chatman left her home around 2:30 p.m.

The jury found Chatman guilty of first-degree murder after which his counsel filed a motion for a new trial. At the hearing on the motion for a new trial, Maurice Williamson testified that he was at the Mount Pilgrim Missionary Baptist Church, which is near the Spin Cycle Laundromat, at the time of the shooting. Lawrence Williams also testified at the hearing on the motion for a new trial regarding the shooting. The State also called defense counsel, who testified that he did not contact Williams because there was nothing in the police reports indicating that he saw the faces of the offenders. The Circuit Court judge denied Chatman's motion for a new trial.

## II.  Procedural Background

After the jury found Chatman guilty of first-degree murder, the Circuit Court judge sentenced him to a term of 40 years imprisonment. On direct appeal to the Illinois Appellate Court, First District, Chatman argued that the trial court erred in allowing the prosecution to argue a motive theory, namely, that he shot Redmond in retaliation for an earlier shooting,

3

without providing evidence that he knew of that earlier incident, and that trial counsel was ineffective for failing to object to this alleged error. On January 27, 2009, the Illinois Appellate Court rejected Chatman's claim and affirmed the Circuit Court. The Illinois Appellate Court also denied Chatman's petition for rehearing on February 23, 2009. On May 28, 2009, the Supreme Court of Illinois denied Chatman's petition for leave to appeal ("PLA") in which Chatman brought this same claim.

On February 24, 2010, Chatman filed a postconviction petition pursuant to the Illinois Postconviction Hearing Act, 725 ILCS 5/122–1, *et seq.*, in which he brought the following claims: (1) he is actually innocent; (2) trial counsel was constitutionally ineffective for failing to move to quash his arrest and suppress evidence; and (3) appellate counsel was constitutionally ineffective for failing to argue that (a) trial counsel failed to call Maurice Williamson and Lawrence Williams at trial to rebut eyewitness Haggard's testimony, (b) trial counsel failed to impeach Haggard with a prior inconsistent statement involving the reason for her presence in the laundromat's neighborhood and her prior drug use, (c) the trial court erred in admitting Detective Pellegrini's hearsay testimony about Wilder's lineup identification, and (d) the trial court erred in limiting Detective Pellgerini's cross-examination concerning the difference in size between Chatman and the other individuals in the lineup.

The Circuit Court dismissed Chatman's postconviction petition and later denied Chatman's motion to vacate that judgment. On appeal to the Illinois Appellate Court, First District, Chatman raised the following claims: (1) he was actually innocent; and (2) appellate counsel was constitutionally ineffective for failing to argue that (a) trial counsel failed to call Maurice Williamson and Lawrence Williams at trial to rebut eyewitness Haggard's testimony,

(b) the trial court erred in admitting Detective Pellegrini's hearsay testimony about Wilder's lineup identification, and (c) the trial court erred in limiting Detective Pellgerini's cross-examination concerning the difference in size between Chatman and the other individuals in the lineup.

On August 27, 2013, the Illinois Appellate Court affirmed the Circuit Court's judgment denying postconviction relief, Chatman then raised the same claims in his PLA to the Supreme Court of Illinois that he raised to the Illinois Appellate Court. On January 29, 2014, the Supreme Court of Illinois denied his postconviction PLA.

### III.     Habeas Petition

On March 7, 2014, Chatman filed his pro petition for a writ of habeas corpus. On April 1, 2014, Chatman filed a response to the Court's March 17, 2014, Order asking him if he wanted to drop his unexhausted claims relating to the postconviction proceedings or have the Court stay his case pending complete exhaustion of his state court remedies. In response, Chatman stated that he wished to "stand on the issues as presented." Construing Chatman's pro se allegations in his habeas petition liberally, *see Ambrose v. Roeckeman*, 749 F.3d 615, 618 (7th Cir. 2014), he brings the following claims: (1) he is actually innocent of Redmond's murder; (2) he was denied compulsory process under the Sixth Amendment when his trial attorney failed to call Williamson and Williams at trial to rebut Haggard's trial testimony; (3) the postconviction Circuit Court violated his due process and equal protection rights when the Circuit Court dismissed his postconviction petition at the first stage of the proceedings without conducting an evidentiary hearing or appointing counsel; (4) ineffective assistance of postconviction appellate counsel; (5) ineffective assistance of trial counsel; (6) ineffective assistance of appellate counsel; and (7) his

judgment of conviction is void because the indictment did not include elements underlying the State's accountability theory.[2]

## LEGAL STANDARDS

### I. Habeas Relief

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the Court cannot grant habeas relief unless the state court's decision was contrary to, or an unreasonable application of federal law clearly established by the Supreme Court. *See Williams v. Taylor,* 529 U.S. 362, 402-03, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Ruhl v. Hardy,* 743 F.3d 1083, 1091 (7th Cir. 2014). In *Williams*, the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *See id.* at 405; *see also Kamlager v. Pollard,* 715 F.3d 1010, 1015 (7th Cir. 2013) ("A state court decision is 'contrary to' federal law if it applies the wrong legal standard established by Supreme Court precedent or decides a case differently than the Supreme Court on materially indistinguishable facts.").

Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See Williams,* 529 U.S. at 407. "The state court's application of federal law must not only be incorrect, but 'objectively unreasonable.'"

---

[2] In his April 1, 2014 response to the Court's March 17, 2014 order concerning exhaustion, Chatman further develops his voidness claim.

*Rann v. Atchison,* 689 F.3d 832, 835 (7th Cir. 2012); *see also Williams*, 529 U.S. at 410 ("*unreasonable* application of federal law is different from an *incorrect* application of federal law") (emphasis in original). To be considered objectively unreasonable, a state court's decision must be "well outside the boundaries of permissible differences of opinion." *Kamlager,* 715 F.3d at 1016 (citation omitted).

## II.     Exhaustion and Procedural Default

"A state petitioner seeking a writ of habeas corpus in federal court must first exhaust the remedies available to him in state court, 28 U.S.C. § 2254(b)(1)(A), 'thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights.'" *Cheeks v. Gaetz,* 571 F.3d 680, 685 (7th Cir. 2009) (citations omitted). In particular, a habeas petitioner must fully and fairly present his federal claims through one full round of state court review before he files his federal habeas petition. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Mulero v. Thompson,* 668 F.3d 529, 536 (7th Cir. 2012). "[W]hen a petitioner has exhausted his state court remedies and failed to properly assert his federal claims at each level of review those claims are procedurally defaulted." *Woods v. Schwartz,* 589 F.3d 368, 373 (7th Cir. 2009). A claim is also procedurally defaulted "when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review." *Cone v. Bell,* 556 U.S. 449, 465, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009). Procedural default precludes federal court review of a petitioner's habeas claims. *See Mulero,* 668 F.3d at 536.

A habeas petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice or by showing that the Court's failure to consider the claim would result in a fundamental miscarriage of justice. *See House v. Bell,* 547 U.S. 518, 536, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006). The Supreme Court defines cause sufficient to excuse procedural default as "some objective factor external to the defense" which prevents a petitioner from pursuing his constitutional claim in state court. *See Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Weddington v. Zatecky,* 721 F.3d 456, 465 (7th Cir. 2013). Prejudice means actual prejudice infecting the "entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494 (citation omitted). A fundamental miscarriage of justice occurs when a habeas petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 496.

## ANALYSIS

**I.    Non-Cognizable Claims — Claims 1, 3, and 4**

Several of Chatman's habeas claims are not cognizable on habeas review. To clarify, Chatman is entitled to federal habeas relief "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "The remedial power of a federal habeas court is limited to violations of the petitioner's federal rights, so only if a state court's errors have deprived the petitioner of a right under federal law can the federal court intervene. To say that a petitioner's claim is not cognizable on habeas review is thus another way of saying that his claim 'presents no federal issue at all.'" *Perruquet v. Briley,* 390 F.3d 505, 511 (7th Cir. 2004) (internal citations omitted).

8

First, as the United States Supreme Court teaches "'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins,* 506 U.S. 390, 404, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). Unlike federal habeas claims, Illinois courts recognize actual innocence claims as free standing claims based on the Illinois Constitution. *See People v. Washington,* 171 Ill.2d 475, 489, 216 Ill.Dec. 773, 665 N.E.2d 1330 (Ill. 1996). Nevertheless, because actual innocence is not a federal constitutional claim, it is not cognizable on federal habeas review, and therefore, Chatman's first habeas claim fails. The Court, however, discusses Chatman's actual innocence arguments below as an exception to his procedurally defaulted claims.

Next, Chatman argues that the postconviction trial court erred when it summarily dismissed his postconviction petition without holding an evidentiary hearing and appointing counsel. Because there is no constitutional right to state collateral review of a criminal conviction, *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987), an allegation "that the State may have failed to comply with its post-conviction procedures would not raise a cognizable federal habeas claim." *Resendez v. Smith*, 692 F.3d 623, 628 (7th Cir. 2012). Therefore, the Court denies Chatman's third habeas claim.

Moreover, Chatman brings an ineffective assistance of postconviction appellate counsel claim, which necessarily fails because Chatman does not have a Sixth Amendment right to counsel for state court postconviction proceedings in the first instance. *See Resendez v. Knight,* 653 F.3d 445, 446 (7th Cir. 2011); *Wilson v. United States,* 413 F.3d 685, 687 (7th Cir. 2005). Hence, the Court denies Chatman's ineffective assistance of postconviction appellate counsel

9

claim because it is not cognizable on collateral review.

## II. Procedurally Defaulted Claims — Claims 2, 5, and 6

Next, Chatman has procedurally defaulted his second claim that he was denied compulsory process when his attorney did not call Williamson and Williams at trial, both grounds underlying his ineffective assistance of trial counsel claim, and five of the seven grounds underlying his ineffective assistance of appellate counsel claim. As discussed, a habeas petitioner procedurally defaults a claim if he did not raise the claim in one complete round of state court review, as is the case here. *See Boerckel,* 526 U.S. at 845; *Mulero,* 668 F.3d at 536.

Chatman nonetheless argues that his procedural default of his ineffective assistance of trial counsel claims are excused under *Martinez v. Ryan,* ___ U.S. ___, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012). Under the *Martinez* decision, cause exists to excuse default of an ineffective assistance of trial counsel claim if "(1) the claim of ineffective assistance of trial counsel was a substantial claim; (2) the cause consisted of there being no counsel or only ineffective counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the initial review proceeding in respect to the ineffective assistance of trial counsel claim; and (4) state law requires that an ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding." *Trevino v. Thaler,* ___ U.S. ___, 133 S.Ct. 1911, 1918, 185 L.Ed.2d 1044 (2013) (quoting *Martinez,* 132 S.Ct. at 1318-19, 1320-21). The *Trevino* Court elaborated on the *Martinez* exception stating that *Martinez* applies even if a state system does not explicitly bar a defendant from arguing trial counsel's ineffectiveness on direct appeal, but "as a matter of its structure, design, and operation—does not offer most defendants a meaningful opportunity to present a claim of ineffective assistance of trial counsel on direct

appeal." *Trevino*, 133 S.Ct. at 1921.

Illinois law does not require defendants to raise ineffective assistance of counsel claims for the first time in state collateral proceedings. *See People v. Miller,* 988 N.E.2d 1051, 1062, 370 Ill.Dec. 695, 706 (1st Dist. 2013) (Illinois "considers ineffective assistance claims on direct appeal"). Therefore, the *Martinez* holding does not excuse Chatman's procedural default of his ineffective assistance of trial counsel claims. In addition, the Supreme Court's elaboration in *Trevino* does not excuse Chatman's default because under Illinois law "a petitioner can adequately develop the factual record supporting his ineffective assistance of counsel claim prior to his direct appeal by filing post-trial motions pursuant to the Illinois Supreme Court's decision in *People v. Krankel,* 102 Ill.2d 181 (Ill. 1984)." *Murphy v. Atchison,* No. 12 C 3106, 2013 WL 4495652, at *22 (N.D. Ill. Aug. 19, 2013); *see also People v. Sutherland,* 994 N.E.2d 185, 191, 373 Ill.Dec. 700, 706 (1st Dist. 2013). Therefore, *Trevino* and *Martinez* do not except Chatman's procedurally defaulted ineffective assistance of trial counsel claims.

The Court next turns to Chatman's actual innocence claim as an exception to his procedurally defaulted claims. Actual innocence or the "fundamental miscarriage of justice exception requires 'the habeas petitioner to show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Smith v. McKee,* 598 F.3d 374, 387-88 (7th Cir. 2010) (quoting *Schlup v. Delo,* 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)). A habeas petitioner must support his actual innocence allegations "with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical

11

physical evidence – that was not presented at trial." *Schlup,* 513 U.S. at 324. "To demonstrate innocence so convincingly that no reasonable jury could convict, a prisoner must have documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim." *Hayes v. Battaglia,* 403 F.3d 935, 938 (7th Cir. 2005). Because this type of evidence is unavailable in the vast majority of cases, actual innocence claims are rarely successful. *See Schlup,* 513 U.S. at 324; *Smith,* 598 F.3d at 387-88.

Here, Chatman has failed to set forth any new evidence, whether reliable or not, that was not presented at his criminal trial to support his actual innocence claim. Instead, Chatman argues that he is actually innocent based on the result of his co-defendant's appeal in *People v. Jackson,* 374 Ill.App.3d 93, 869 N.E.2d 895, 311 Ill.Dec. 882 (1st Dist. 2007). In *Jackson*, the Illinois Appellate Court reversed and remanded Jackson's conviction concluding that due to Jackson's illegal arrest, the court must suppress his confession. *See id.,* 374 Ill.App.3d at 108. Chatman argues that without Jackson's statement, police would not have been aware of his participation in the crime. The result of Jackson's appeal, however, does not amount to new or reliable evidence showing that Chatman is actually innocent, but rather shows that Jackson's arrest was illegal. *See Schlup,* 513 U.S. at 327. Moreover, Chatman never argued that his arrest was illegal. As such, Chatman has failed to establish the actual innocence exception. Accordingly, the Court cannot reach the merits of Chatman's procedurally defaulted claims. *See Bolton v. Akpore,* 730 F.3d 685, 696 (7th Cir. 2013).

## III. Defective Indictment Claim — Claim 7

In addition, Chatman claims that his judgment of conviction is void because the indictment did not include the elements underlying the State's accountability theory. Chatman admits that this claim is procedurally defaulted, but argues that he can raise it at any time. Chatman fails to point to any controlling legal authority that he can bring this claim at any time nor does he establish an exception to this procedurally defaulted claim.[3] Nonetheless, assuming for purposes of this Opinion that Chatman has not procedurally defaulted this claim, the Court turns to its merits.

In his habeas petition, Chatman cites *Alleyne v. United States*, ⎯⎯ U.S. ⎯⎯, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), in support of his argument. "Overruling its decision in *Harris v. United States,* 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), the Supreme Court held in *Alleyne* that any fact that increases a mandatory minimum sentence, other that the fact of a prior conviction, 'is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *United States v. Cureton*, 739 F.3d 1032, 1045-46 (7th Cir. 2014) (citation omitted). Whether *Alleyne* applies under the present circumstances is of no moment because the Supreme Court has yet to declare that *Alleyne* is retroactive on collateral review and it is highly unlikely the Supreme Court will do so. As the Seventh Circuit teaches:

> *Alleyne* is an extension of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The Justices have decided that other rules based on *Apprendi* do not apply retroactively on collateral review. *See Schriro v. Summerlin,* 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004). This implies that the Court will not declare *Alleyne* to be retroactive. *See also Curtis v. United*

---

[3] In support of his claim, Chatman relies upon the Respondent's brief to the United States Supreme Court in *United States v. Resendiz-Ponce*, and cases cited therein. *See* 2006 WL 2619932.

*States,* 294 F.3d 841 (7th Cir. 2002) (*Apprendi* itself is not retroactive). But the decision is the Supreme Court's, not ours, to make.

*Simpson v. United States,* 721 F.3d 875, 876 (7th Cir. 2013). Because *Alleyne* is not retroactive of collateral review, Chatman's claim is untenable.

Moreover, in Illinois, when the State charges a defendant as a principal in an indictment, the jury may convict the defendant as an accessory even if the indictment does not charge defendant as an accessory. *See People v. Cooney*, 136 Ill.App.3d 989, 1009, 484 N.E.2d 802, 815, 92 Ill.Dec. 71, 84 (1st Dist. 1985). In other words, "aiding and abetting is merely a theory of liability, not a substantive offense, and need not be charged in the indictment." *United States v. Schuh,* 289 F.3d 968, 976 (7th Cir. 2002); *see also People v. Ceja,* 204 Ill.2d 332, 361, 789 N.E.2d 1228, 1247, 273 Ill.Dec. 796, 815 (Ill. 2003) ("accountability is not a separate offense, but merely an alternative manner of proving a defendant guilty of the substantive offense."). Therefore, Chatman's claim is without merit on this basis as well. *See Ruhl v. Hardy,* 743 F.3d 1083, 1091 (7th Cir. 2014) ("If no state court has squarely addressed the merits of a habeas claim, we review the claim de novo under the pre-AEDPA standard of 28 U.S.C. § 2243, but still with deference to the state court."). As such, Chatman's voidness claim fails.

## IV. Ineffective Assistance of Appellate Counsel — Claim 6

Chatman did not procedurally default two of his arguments that his appellate counsel was constitutionally ineffective. As with ineffective assistance of trial counsel claims, courts apply the two-prong test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to evaluate the effectiveness of appellate counsel. *See Warren v. Baenen,* 712 F.3d 1090, 1105 (7th Cir. 2013). Under the *Strickland* performance prong, an appellate counsel's performance is constitutionally deficient if counsel fails to appeal an issue that is

14

obvious and clearly stronger than the claims counsel raised on appeal. *See Blake v. United States,* 723 F.3d 870, 888 (7th Cir. 2013); *Johnson v. Thurmer,* 624 F.3d 786, 793 (7th Cir. 2010). In this context, appellate counsel need not raise every non-frivolous claim, but should select among claims to maximize the likelihood of success on appeal. *See Smith v. Robbins,* 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); *McNary v. Lemke,* 708 F.3d 905, 920 (7th Cir. 2013). To establish the *Strickland* prejudice prong, Chatman must show that there is a reasonable probability that the issue appellate counsel did not raise would have changed the outcome of the appeal. *See Shaw v. Wilson*, 721 F.3d 908, 918 (7th Cir. 2013).

First, Chatman bases his ineffective assistance of appellate counsel claim on counsel's failure to argue on direct appeal that Detective Pellegrini's hearsay testimony concerning Wilder's lineup identification was improper. In rejecting Chatman's argument, the postconviction Illinois Appellate Court reasoned that Section 115-12 of the Illinois Criminal Code provides a statutory exception to the general prohibition against hearsay, namely, "a witness' prior statement of identification is admissible as substantive evidence in a criminal trial when testified to by the witness or by a third person, such as a police officer, who was present when the witness made the identification." *People v. Chatman,* No. 1-10-2275, 2013 WL 4679202, at *12 (1st Dist. Aug. 27, 2013) (unpublished). The Illinois Appellate Court thus concluded that because "Wilder, the declarant, testified at defendant's trial and was available for cross-examination[,] the identification statement was properly admitted," and "prejudice does not result from appellate counsel's failure to raise this issue because it lacks merit." *Id.*

Here, Chatman cannot establish that the Illinois Appellate Court's decision was objectively unreasonable in that it was "well outside the boundaries of permissible differences of

15

opinion." *Kamlager,* 715 F.3d at 1016 (citation omitted). As the Illinois Appellate Court indicates, appellate counsel's failure to raise a losing argument did not prejudice Chatman, as required under the second *Strickland* prong. *See Whitehead v. Cowan*, 263 F.3d 708, 731 (7th Cir. 2001) ( "[a]ppellate lawyers are clearly not incompetent when they refuse to follow a 'kitchen sink' approach to the issues on appeals.") (citation omitted); *see also Martin v. Evans*, 384 F.3d 848, 852 (7th Cir. 2004) ("counsel is not required to raise every non-frivolous issue on appeal"). As the Supreme Court teaches, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes,* 463 U.S. 745, 751-52, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Accordingly, this ineffective assistance of appellate counsel claim is without merit.

Last, Chatman argues that his appellate counsel was constitutionally ineffective because counsel failed to argue on direct appeal that the prosecutor's motive theory — that Chatman shot Redmond in retaliation for Redmond firing shots earlier that day — was improper. As the record reflects, however, appellate counsel did raise this argument on direct appeal after which the Illinois Appellate Court rejected it. Because there is no factual basis for the last, non-defaulted ineffective assistance of appellate counsel claim, it necessarily fails.

## V.     Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Chatman a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in the present order.

16

*See Gonzalez v. Thaler,* ___ U.S. ___, 132 S.Ct. 641, 649 n.5, 181 L.Ed.2d 619 (2012).

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition, instead, he must first request a certificate of appealability. *See Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003); *Bolton,* 730 F.3d at 697. A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See Miller-El,* 537 U.S. at 336; *Thomas v. Zatecky,* 712 F.3d 1004, 1006 (7th Cir. 2013); 28 U.S.C. § 2253(c)(2). Under this standard, Chatman must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El,* 537 U.S. at 336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)). In cases where a district court denies a habeas claim on procedural grounds, a certificate of appealability should issue only if the petitioner shows that (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack,* 529 U.S. at 485.

Here, a reasonable jurist would not conclude that the Court erred in ruling that Chatman had procedurally defaulted his habeas claims. *See id.* ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."). Also, reasonable jurists would not disagree with the conclusion that Chatman's ineffective assistance of appellate counsel claims were factually baseless or

17

meritless. Last, because *Alleyne* is not retroactive on collateral review, jurists of reason would not dispute that Chatman's voidness claim is untenable, and in any event, without merit. Therefore, the Court declines to certify any issues for appeal. *See* 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For these reasons, the Court denies Chatman's petition for a writ of habeas corpus and declines to certify any issues for appeal. *See* 28 U.S.C. §§ 2253(c)(2), 2254(d).

**Dated:** August 6, 2014

**ENTERED**

*[signature]*

**AMY J. ST. EVE**
**United States District Judge**